## LAMAR, Executor, *v.* MICOU, Administratrix.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Petition filed January 20, 1885.

A guardian, appointed in a State which is not the domicil of the ward, should not, in accounting in the State of his appointment for his investment of the ward's property, be held, unless in obedience to express statute, to a narrower range of securities than is allowed by the law of the State of the ward's domicil.

Infants having a domicil in one State, who after the death of both their parents take up their residence at the home of their paternal grandmother and next of kin in another State, acquire her domicil.

The courts of the United States take judicial notice of the law of any State of the Union, whether depending on statutes or on judicial opinions.

*Lamar* v. *Micou*, 112 U. S. 452, confirmed.

This was a petition for a rehearing of *Lamar* v. *Micou*, decided at this term and reported 112 U. S. 452.

*Mr. Stephen P. Nash* and *Mr. George C. Holt* filed a brief for the petitioner.

MR. JUSTICE GRAY delivered the opinion of the court.

This is a petition for a rehearing of an appeal from a decree of the Circuit Court of the United States for the Southern District of New York, upon a bill filed against the executor of a guardian by the administratrix of his ward.

Gazaway B. Lamar was appointed in 1855, by a surrogate's court in New York, guardian of the person and property of Martha M. Sims. The bill alleged that at the time of the appointment the ward resided in New York. The answer alleged that at that time she was temporarily residing there, and was then, as well as in 1861, a citizen of Alabama. The hearing of the merits of the case was had in the Circuit Court upon the pleadings, and upon certain facts stated by the defendant and admitted by the plaintiff, which, so far as they affected the domicil of the ward, were as follows:

William W. Sims, the ward's father, died at Savannah in the State of Georgia in 1850, leaving two infant daughters, and a widow, who in 1853 married a citizen of New York, and thenceforth resided with him in that State until 1856, when they removed to Connecticut, and resided there until her death in 1859. The two infants lived with their mother and stepfather in New York (where Lamar was appointed in 1855 guardian of both infants) and in Connecticut, from her second marriage until her death, and then went to Georgia, and thenceforth resided with their father's mother and her daughter and only living child, their aunt, at first in Georgia and afterwards in Alabama.

Upon those facts, this court assumed the domicil of William W. Sims to have been in Georgia; and held that the domicil of his children continued to be in that State throughout their residence with their mother and her second husband in New York and Connecticut, and until their return to Georgia upon

the death of their mother in 1859, and was thereafter in Georgia or Alabama; that whether the guardian's domicil was in Georgia or in New York, he should not, in accounting for his investments, be held to a narrower range of securities than was allowed by the law of the ward's domicil; and that many of his investments were justified by the law of Georgia or of Alabama; and therefore reversed the decree of the Circuit Court, which had held him to account according to the law of New York for the manner in which he had invested the property. 112 U. S. 452.

The questions so passed upon, though hardly touched by either counsel at the first argument, arose upon the facts admitted, were vital to the determination of the rights of the parties, and could not be overlooked by this court. The importance and comparative novelty of some of the questions induced the court to invite the submission of a full brief in support of the petition for a rehearing. But, upon careful consideration of the petition and brief, the court has seen no ground for changing its opinion, and has not thought it necessary to add anything, beyond what has been suggested by examination of the authorities cited for the petitioner.

In *Pritchard* v. *Norton*, 106 U. S. 124, the point decided was that the validity and effect of a bond, executed in New York, to indemnify the obligee therein against his liability upon an appeal bond executed by him in a suit in Louisiana, was to be governed by the law of Louisiana. The decision was based upon the fundamental rule, or, in the words of Chief Justice Marshall, the "principle of universal law"—"that in every forum a contract is governed by the law with a view to which it was made." *Wayman* v. *Southard*, 10 Wheat. 1, 48. And reference was made to two recent English cases of high authority, in which, by force of that rule, the effect of a contract of affreightment, and of a bottomry bond given by the master, was held to be governed, not by the law of the place where the contract was made, nor by that of the place where it was to be performed, nor yet by the law of the place in which the suit was brought, but by the law of the country to which the ship belonged. *Lloyd* v. *Guibert*, 6 B. &

S. 100; *S. C.*, L. R. 1 Q. B. 115; *The Gaetano & Maria*, 7 P. D. 137.

In *Lloyd* v. *Guibert*, Mr. Justice Willes, delivering the judgment of the Court of Exchequer Chamber, said that when "disputes arise, not as to the terms of the contract, but as to their application to unforeseen questions, which arise incidentally or accidentally in the course of performance, and which the contract does not answer in terms, yet which are within the sphere of the relation established thereby," "it is necessary to consider by what general law the parties intended that the transaction should be governed, or rather to what general law it is just to presume that they have submitted themselves in the matter." 6 B. & S. 130; L. R. 1 Q. B. 120. And in *The Gaetano & Maria*, Lord Justice Brett, with whom Lord Coleridge and Lord Justice Cotton concurred, pointed out that the matter before the court was "not the question of the construction of a contract, but of what authority arises out of the fact of a contract having been entered into." 7 P. D. 147.

The question in what securities a guardian may lawfully invest is not one of mere construction of the contract expressed in the guardian's bond or implied by his acceptance of the guardianship, but rather of what is "within the sphere of the relation established thereby," or "what authority arises out of the fact of a contract having been entered into." And the very terms of Lamar's bond do not point to the law of New York only, but impose a general obligation to "discharge the duty of a guardian to the said minor according to law," as well as to render accounts of the property and of his guardianship to any court having cognizance thereof. See 112 U. S. 455.

The view heretofore expressed by this court, that the domicil of the guardian is immaterial, and that, as a general rule, the management and investment of the ward's property are to be governed by the law of the domicil of the ward, although, so far as the remedy is concerned, the accounting must conform to the law of the place in which the liability of the guardian is sought to be enforced, accords with the statements of Bar, as well in the passage quoted by the petitioner, as in that referred

to in the former opinion; and the only decision of a Scotch court brought to our notice tends in the same direction, although the Scotch commentators treat the question as an open one. Bar International Law, §§ 87, 106 ; (Gillespie's translation) 357, 359, 438, 445. note ; *Lamb* v. *Montgomerie* (1858) 20 Scotch Ct. of Sess. Cas. (2d series) 1323; Fraser on Parent & Child, 609.

The cases of *Preston* v. *Melville*, 8 Cl. & Fin. 1, and *Blackwood* v. *The Queen*, 8 App. Cas. 82, cited for the petitioner, relate only to the place in which personal property of a deceased person is to be administered, or is subject to probate duty.

The petitioner, while admitting that the statement in the former opinion that the domicil of the father was in Georgia was a natural inference from the facts stated in the record, and that it is probable that the wards never acquired a domicil in any Northern State, has now offered affidavits tending to show that the father's domicil at the time of his death and for six years before, was not in Georgia, but in Florida ; and has referred to statutes and decisions in Florida as showing that the law of that State in the matter of investments did not differ from the law of New York. Florida Stat. November 20, 1828, § 35; Thompson's Digest, 207, 208; *Moore* v. *Hamilton*, 4 Florida, 112, and 7 Florida, 44.

But if, against all precedent, this new evidence could be admitted after argument and decision in this court, it would afford no ground for arriving at a different conclusion upon the merits of the case.

If the domicil of the father was in Florida at the time of his death in 1850, then, according to the principles stated in the former opinion, the domicil of his children continued to be in that State until the death of their mother in Connecticut in 1859. In that view of the case, the question would be whether they afterwards acquired a domicil in Georgia by taking up their residence there with their paternal grandmother. Although some books speak only of the father, or, in case of his death, the mother, as guardian by nature; 1 Bl. Com. 461; 2 Kent Com. 219; it is clear that the grandfather or grandmother, when the next of kin, is such a guardian. Hargrave's note, 66 to Co. Lit. 88 *b ;* Reeve, Domestic Relations, 315. See also

*Darden* v. *Wyatt*, 15 Georgia, 414. In the present case, the infants, when their mother died and they went to the home of their paternal grandmother, were under ten years of age; the grandmother, who appears to have been their only surviving grandparent and their next of kin, and whose only living child, an unmarried daughter, resided with her, was the head of the family; and upon the facts agreed it is evident that the removal of the infants after the death of both parents to the home of their grandmother in Georgia was with Lamar's consent. Under these circumstances, there can be no doubt that by taking up their residence with her they acquired her domicil in that State in 1859, if their domicil was not already there. And there being no evidence that any of Lamar's investments had diminished in value before that time, it is immaterial whether the previous domicil of the wards was in Florida or in Georgia, inasmuch as the propriety of his investments was thereafter to be governed by the law of Georgia.

The law of any State of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof. *Owings* v. *Hull*, 9 Pet. 607; *Pennington* v. *Gibson*, 16 How. 65; *Covington Drawbridge Co.* v. *Shepherd*, 20 How. 227. And nothing has now been adduced tending to show that, as applied to the facts admitted by the parties, either the law of Georgia or the law of New York was other than we have held it to be.

The question whether, as matter of fact, Lamar acted with due care and prudence in making his investments, was argued at the former hearing, and no reason is shown for reopening that question

*Rehearing denied.*