ANNA ELIZA MASTERSON, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 107280.    Promulgated December 22, 1942.

*Harry C. Weeks, Esq.*, and *Benjamin L. Bird, Esq.*, for the petitioner.
*Frank B. Appleman, Esq.*, for the respondent.

316

322

**OPINION.**

OPPER, *Judge:* A preliminary question is raised by petitioner's plea of the statute of limitations. The deficiency notice was concededly subsequent to the expiration of the three-year period prescribed as the general rule. Revenue Act of 1934, sec. 275 (a). It is asserted that it was nevertheless timely as being within the five-year period specified in section 275 (c) for cases in which the "taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return * * *." The addition to petitioner's taxable income proposed by the deficiency

notice is incontrovertibly in excess of 25 percent of the gross income shown on the return which petitioner filed on her own behalf; but she contends that by filing a further return for the estate showing the balance of the income, she has in effect reported the entire income by considering the two returns together, so that there was in fact no actual omission of income under the principle of *Germantown Trust Co.* v. *Commissioner,* 309 U. S. 304.

This is reasoning which we are unable to approve. The question in the *Germantown* case was whether a return filed by a fiduciary on the theory that the organization in question was a trust could be considered as its return when the same organization was shown to be an association taxable as a corporation. The Court held that it could, since all the information necessary to the determination of the correct amount of tax was included in the return. There was no question of treating two returns as one, and the interpretation of section 275 (c) was not involved.

That section is explicit in its reference to "the taxpayer." The "gross income" from which an omission brings the section into play must be the gross income of that taxpayer and "the return" referred to must be his return. If the provision were to be construed so that an omission from one taxpayer's return would be without effect upon a showing that the unreported income was contained in the return of some other taxpayer, its effect would be largely nullified. In other words, it does not comport with the purpose or language of the statute to say that the gross income shown on the return of another taxpayer is the same as "the gross income" of "the taxpayer." It might as well be argued that the return of the omitted income for another year would equally constitute a complete return of all the income even though on two different returns. Yet it is clear that this is one of the exact situations to which the provision was directed, it being assertedly designed to cover a taxpayer who "might report as income for one year an item of income which properly belonged in another year." Senate Report 558, 73d Cong., 2d sess., p. 43.

The section is not punitive and was enacted in its ultimate form in order not to bear too heavily on "a taxpayer who makes an honest mistake * * *." *Ibid.* The statute is extended for only two years, not indefinitely, as by the provision considered in the *Germantown* case. And, finally, the facts necessary to a correct determination of the tax due would not appear from two returns of the type before us here, since there might be nothing on the face of either to show that the income included in the estate return was the same as that omitted from the beneficiary's. For these reasons we think it inadmissible to say that this income was included in petitioner's gross income or that there is any reason for reducing the period of limitation below five years. The plea in bar must therefore be overruled. *Foster* v. *Com-*

*missioner* (C. C. A., 5th Cir.), 131 Fed. (2d) 405; *Estate of C. P. Hale*, 1 T. C. 121.

On the merits the controversy is whether petitioner's interest in what had formerly been the community property of herself and her deceased husband was a conventional life estate or the limited right to mainte- nance and support. It is on the former assumption that the re- spondent has taxed to petitioner, as constructively received, the en- tire income from the property in question; and it is on the latter that petitioner returned and paid tax on only so much of the income as she actually received for living expenses, which she now contends was the limit of her tax liability.

The same issue, that is, the nature of petitioner's interest in this income, was before the Board in connection with an asserted gift tax deficiency, in a proceeding decided at 42 B. T. A. 419. It was there held, contrary to petitioner's contention, that her interest was a con- ventional life estate and that the gift which she made to her children in the present tax year included the unspent and accumulated income. This result was reached in the face of the same contention which peti- tioner makes here, that the unused income did not belong to her, but was from the beginning the property of the remaindermen, who were there also the donees.

An appeal from that determination was taken to the Circuit Court of Appeals for the Fifth Circuit. But in the meantime the question was litigated in what appears to have been the appropriate local court, and a decision was there obtained that petitioner was entitled to no conventional life estate but merely to the right of maintenance. The proceedings in that case were tendered to the Court of Appeals upon its review of the Board's decision. That court refused to accept them "as evidence," but held that, "so far as the legal questions decided by the Texas State Court are concerned we take judicial knowledge of the decision * * *. We are not bound by that decision, and to the extent that it differs from what we have said we do not agree with it." 127 Fed. (2d) 252, 256. The court, affirming the Board, held that what petitioner "then owned was a life estate in all the property, and she, therefore, conveyed to the children one-half of her life estate, plus the accretions earned and on hand from this one-half."

In that posture of this proceeding respondent contends that the judgment of the Circuit Court of Appeals constitutes *res judicata* here. Petitioner, on the contrary, rests upon the state court decision as being binding, notwithstanding the prior adjudication, in reliance upon *Blair* v. *Commissioner*, 300 U. S. 5, and *Estate of George H. Balzereit*, 46 B. T. A. 959.

In the absence of complicating factors, a prior adjudication of the same issue in litigation between the same parties would foreclose all

further consideration. *The Evergreens*, 47 B. T. A. 815. A recognized exception exists, however, where a subsequent change in the applicable law may be said to affect the fundamental question. Such a change can be supplied by a subsequent state court decision adjudicating the property rights in issue. _Blair_ v. *Commissioner, supra;* *Estate of George H. Balzereit, supra.* The circumstance then existing, as described in *Blair* v. *Commissioner*, is that " after the decision in the first proceeding, the opinion and decree of the state court created a new situation." [1]

But there is nothing to indicate that the principle of *res judicata* is inapplicable merely because there is involved a decision of a state court settling the property rights of the parties. The cases cited are no more than instances of an acceptance of the general principle, from which they emerge as exceptions due to a change in the state of the law. Cf. *Tait* v. *Western Maryland Railway Co.*, 289 U. S. 620.

In the present case, the issue is whether the decision of the Circuit Court of Appeals for the Fifth Circuit in a proceeding in which these parties litigated the same question is conclusive; and in disposing of that question we can not resort to the concept of a changed situation. Here the Texas court's decision did not follow but preceded the previous adjudication. By taking judicial notice of that decision the appellate court had before it the action taken by the state court to precisely the same extent as if it had been introduced in evidence. *Lamar* v. *Micou*, 114 U. S. 218; see *Oetjen* v. *Central Leather Co.*, 246 U. S. 297, 301. There is no more than that before us here.

Nor is the adjudication by the Circuit Court of Appeals any the less conclusive because it may be said that the issue it decided was partly one of law. The binding effect of an application of the principle of *res judicata* is as inescapable in the one case as in the other. " * * * a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, can not be disputed in a subsequent suit by the same parties or their privies." *Southern Pacific Railroad Co.* v. *United States*, 168 U. S. 1, 48. The disposition of the issue is what is conclusive and it follows that whatever was involved in the question originally decided as to both fact and law is subsequently binding. For example, in *Bissell* v. *Spring Valley Township*, 124 U. S. 225, 231, 232, 236:

The question for determination in this case relates to the effect of the former judgment upon the present action, which is upon different coupons, though attached to the same series of bonds. * * * Is the litigation any the less concluded because the fact upon which the judgment rested was established by the

---

[1] The principle has been thus stated with the *Blair* case cited as authority : "However, where, after the rendition of a judgment, subsequent events occur, creating a new legal situation or altering the legal rights or relations of the litigants, the judgment may thereby be precluded from operating as an estoppel." 30 Am. Jur. 943.

demurrer? \* \* \* In the former action against the present defendant the adjudication was that the bonds themselves were never signed by the proper officers required by the statute of the State to sign them, and therefore they were not legal obligations of the township. \* \* \* the bonds being found to be invalid and void, he is precluded from attempting to show the contrary, either of the fact of their wanting the signature of the county clerk, or of the law that for that reason they were not binding obligations of the municipality. The fact and the law are adjudged matters between the parties, and not open, therefore, to any further contest.

See also *Northern Pacific Railway Co.* v. *Slaght*, 205 U. S. 122, 131; *Passailaigue* v. *Herron* (C. C. A., 5th Cir.), 38 Fed. (2d) 775, 776. The doctrine of *res judicata* is, it might be said, a device for easing the burden of the courts as a desideratum of public policy. It assumes that there must be an end to litigation. Where the parties and the issue are the same the adjudication of a question of law is hence completely controlling in subsequent proceedings. *New Orleans* v. *Citizens' Bank*, 167 U. S. 371.

Nor would it be of any consequence, if this can be suggested without presumption, whether the decision in the prior proceeding were completely erroneous. The function of *res judicata* is to make it unnecessary that the correctness of the former adjudication be reexamined. If it were only prior decisions with which the subsequent triers of the question could independently agree, to which the rule applied, there would be no need for or benefit from the rule. It is for that reason at least that the former decision is said to make white black, black white, the crooked straight, the straight crooked. *Jeter* v. *Hewitt*, 22 How. (U. S.) 352, 364. " 'Matters once determined in a court of competent jurisdiction may never again be called in question by parties or privies against objection, though the judgment may have been erroneous and liable to, and certain of, reversal in a higher court.' " *New Orleans* v. *Citizens' Bank, supra*, 398.

Here there can be no question but what the issue in this case, namely the character of petitioner's interest in this income, was "distinctly put in issue and directly determined by a court of competent jurisdiction" in the prior litigation; and that it was there determined to be a conventional life estate, notwithstanding the state court decision to the contrary. We can not hold in these proceedings that petitioner's interest in the income in question was limited to the right to maintenance without flying in the face of the previous adjudication of the same question between the same parties by the Fifth Circuit Court of Appeals. We can not disregard that disposition of the issue without doing violence to the accepted principles of *res judicata*. And there is nothing here to justify departing from those principles under the *Blair* doctrine, since nothing has in the meantime "created a new situation." We conclude that the Fifth Circuit Court's decision is binding and that accordingly petitioner's interest was a legal life estate.

It follows that the respondent correctly charged her with the entire income.

The final question is whether we can grant petitioner's claim to an offset, against the deficiency, of the income tax paid on behalf of the estate. However desirable might be such a procedure, we think the difficulties to be overcome are too great. If the estate has overpaid its tax, it will not do to permit the tax liability of a different taxpayer to be reduced thereby. *Charles V. Parker*, 17 B. T. A. 608; *Robert C. Roebling*, 28 B. T. A. 644, 656; reversed on other grounds (C. C. A., 3d Cir.), 78 Fed. (2d) 444. Any claim for refund which the estate may have on account of the overpayment is not before us, since the estate is not a party to these proceedings, but if it has such a claim and the refund is still permissible, see Revenue Act of 1938, section 820, the possibility that respondent might there be subjected to a double detriment is too great to justify the deduction of the same claim here. Cf. *George H. Jones, Executor*, 34 B. T. A. 280. The result must be to deny the set-off.

Other issues are now conceded.

*Decision will be entered under Rule 50.*