Michael TONEY, Individually and on
behalf of all others who are
similarly situated, Plaintiffs-Appellees,

v.

Roland BURRIS, Individually and in his
official capacity as the Comptroller of
the State of Illinois, Defendant-Appellant.

No. 86–2956.

United States Court of Appeals,
Seventh Circuit.

Argued May 26, 1987.

Decided Sept. 16, 1987.

Rosalyn B. Kaplan, Asst. Atty. Gen., Chicago, Ill., for defendant-appellant.

Walter S. Clifton, Jr., Urbana, Ill., for plaintiffs-appellees.

Before WOOD, CUDAHY, and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The plaintiff, Michael Toney, brought suit under 42 U.S.C. § 1983 for declaratory and injunctive relief against Roland Burris, Comptroller of the State of Illinois, on behalf of himself and all others who have had or will have funds withheld pursuant to the State Comptroller Act, § 10.05, Ill.Ann. Stat. ch. 15, ¶ 210.05 (Smith-Hurd Supp. 1987). The plaintiff is a state employee whose paychecks were being offset to reduce the balance due the state under his student loans. The plaintiff alleged that the statutory offset provision was unconstitutional because it deprived him and others similarly situated of property and failed to provide them with predeprivation notice and a meaningful opportunity to be heard. The district court certified a class consisting of "all persons who have had or will have their funds withheld by the defendant acting pursuant to Ill.Rev.Stat. ch. 15, § 210.05," and held that the statute was unconstitutional on its face and as it was applied to plaintiff. *Toney v. Burris*, 650 F.Supp. 1227, 1243 (N.D.Ill.1986). The district court therefore granted plaintiff's motion for summary judgment and enjoined the defendant from enforcing Ill.Rev.Stat. ch. ¶ 210.05 and its implementing regulations. The defendant appealed.

## I. FACTUAL BACKGROUND

The parties do not dispute the essential facts of this case.

The plaintiff applied for and received two Illinois Guaranteed Student Loans totaling $6,860 in principal. The loans were provided to him in 1978 and 1979 at an interest rate of seven percent by the First National Bank of Chicago. The Illinois State Scholarship Commission ("ISSC") acted as guarantor of plaintiff's obligation to repay this debt to the bank. When receiving his loans, the plaintiff signed a Statement of Borrower's Responsibilities.

On May 5, 1983, the ISSC received a Lender Request for Purchase of the plaintiff's loans from the bank. The plaintiff had failed to sign the required payout notes. Pursuant to this request, the ISSC reimbursed the bank on December 15, 1983.

By letter dated January 11, 1984, the ISSC notified the plaintiff that it had the authority to request the Comptroller to offset funds from plaintiff's state paycheck. The letter invited the plaintiff to discuss the matter with his supervisor or with the writer, a representative of the ISSC's collection department. On January 17, 1984, the ISSC acknowledged a conversation with the plaintiff in which an agreement was reached regarding repayment of the plaintiff's student loans. The letter specified monthly payment due dates and amounts and directed plaintiff to contact the ISSC if an anticipated increase in payments on April 24, 1985, proved to be "unrealistic." On March 8, 1984, the plaintiff sent to the ISSC his first installment payment.

The plaintiff soon fell into arrears in his new payment agreement.[1] Plaintiff was sent notifications of ISSC's intention to seek offsets on December 7, 1984, April 22, 1985, and January 6, 1986.

The January 6, 1986, letter informed the plaintiff that the ISSC intended to request the defendant to offset funds from the plaintiff's paycheck to reduce plaintiff's indebtedness to the state. The defendant included in the record a copy of the form letter used for this purpose. The letter asserts that the plaintiff's student loan account is "seriously past due," and that the state is statutorily authorized to offset his entire paycheck, or a portion thereof, to reduce the plaintiff's debt. In order to avoid this procedure, the letter advises the plaintiff to remit the arrearages immediately. The letter does not inform the plaintiff of any opportunity to challenge his indebtedness.

---

1. As of June 2, 1986, ISSC records reflected a total of nine payments received from plaintiff between March 13, 1984, and January 30, 1986.

On February 13, 1986, the ISSC requested the Comptroller to deduct $280 from wage payments due the plaintiff. The Comptroller withheld the requested amount and, by letter dated April 12, 1986, notified the plaintiff of his action. The letter informed the plaintiff of his right to protest to the Comptroller's office in writing and within thirty days of the withholding; if no protest was received within thirty days, the money would be sent to the ISSC.

On February 19, 1985, and on April 1, 1986, the plaintiff and his wife filed petitions for bankruptcy. They were discharged "from all dischargeable debts" on August 11, 1986. Plaintiff had filed suit on May 12, 1986.

## II.  DISCUSSION

The defendant raises three issues on appeal: (1) whether the statutory and regulatory scheme under which the Comptroller offsets debts due the state from warrants to be issued by the state deprives plaintiff and the class members of due process of law; (2) whether the eleventh amendment bars declaratory and injunctive relief against the Comptroller; (3) whether this action is moot.

### A.  Abstention

■  The district court considered the defendant's request that it abstain from deciding the constitutionality of the state offset statute, but declined to do so. The court found that "the state laws [on their face] are not reasonably susceptible of an interpretation that comports with due process" and that "[p]laintiff's related claim that he did not in fact receive due process

is not an issue which can be avoided by an interpretation of state law." 650 F.Supp. at 1233. The court therefore found it appropriate to rule on the statute's constitutionality. We agree that because the statute implicated the plaintiff's due process rights under the fourteenth amendment to the federal Constitution there was no reason for the district court to abstain from deciding the case in favor of the state courts. *Ace Cycle World, Inc. v. American Honda Motor Co.*, 788 F.2d 1225, 1228 (7th Cir.1986). *See generally* 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 4030 (1977).

### B.  Eleventh Amendment

The defendant argues that the eleventh amendment to the Constitution bars the district court from granting declaratory and injunctive relief to the plaintiff because there is no continuing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985); *Dial v. Coler*, 791 F.2d 78 (7th Cir.1986); *Watkins v. Blinzinger*, 789 F.2d 474 (7th Cir. 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987). According to the defendant, new regulations passed while the case was pending in the trial court have resolved whatever constitutional problems may have existed under the prior statute and there is thus no basis for declaratory or injunctive relief.

This suit commenced on May 12, 1986. On June 3, 1986, the rules pertaining to offsets were amended adding, among other things, two paragraphs dealing with notice and hearings.[2]

---

2.  The rules when the plaintiff filed his suit provided in pertinent part as follows:

Section 285.1102 Request for Processing a Claim under Section 10.05

a) The Comptroller will not process a claim under Section 10.05 until he has received notification that an account or claim in favor of the State is then due and payable against the person entitled to a warrant on the State treasury or on other funds held by the State Treasurer.

b) For purposes of Section 10.05 and these rules promulgated pursuant thereto, "notification" of an account or claim in favor of the State shall be deemed to occur when the State

agency in favor of which the account or claim has arisen has submitted to the Comptroller, in such form as the Comptroller may designate, a written statement, thereof, which statement must contain the following information:

1) the name, address and Social Security Number or Federal Employer's Identification Number of the person against whom the claim exists;

2) the amount of the claim then due and payable to the State;

3) the reason why there is an amount due to the State (i.e. income tax liability, overpayments, etc.);

### 1. The District Court's Opinion

The district court, analyzing the defendant's actions under the old rules in offsetting funds from plaintiff's wages, found that the plaintiff had a property interest in his wages. 650 F.Supp. at 1234; *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 340, 89 S.Ct. 1820, 1822, 23 L.Ed.2d 349 (1969). The court also found that all members of the class had a property interest in what the defendant had or would withhold from them.

In deciding the question of whether a particular claim implicates a property interest, a federal court will look to state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Fontano v. City of Chicago*, 820 F.2d 213, 214 (7th Cir.1987). A property interest is defined as a "legitimate claim of entitlement." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Section 10.05 of the State Comptroller Act, by its own terms, applies only to entitlements and thus, property interests. Ill.Ann.Stat. ch. 15, ¶ 210.05 (Smith-Hurd Supp.1987). We therefore agree with the district court that the plaintiff and all members of the class have a property interest in the funds the Comptroller has or would have offset.

The district court went on to consider whether the Illinois withholding statute guaranteed the plaintiff and his class due process before they were deprived of their property. Finding that due process protection applied to the plaintiff's loss of his wages, the court used the *Mathews* balancing test to determine what process the plaintiff would be entitled to. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *see also Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct.

2593, 2600, 33 L.Ed.2d 484 (1972). Noting that the United States Supreme Court and the Seventh Circuit have indicated that predeprivation notice and hearing should be the norm, *United States v. $8,850*, 461 U.S. 555, 562 n. 12, 103 S.Ct. 2005, 2011 n. 12, 76 L.Ed.2d 143 (1983); *Miller v. City of Chicago*, 774 F.2d 188, 191 (7th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1949, 90 L.Ed.2d 358 (1986), the district court found that "in the absence of ... narrow and exceptional circumstances," not present in this case, "a predeprivation notice and opportunity to be heard is required." 650 F.Supp. at 1235.

The district court considered how the requirements of due process would apply to this case. The court found that the plaintiff had received three letters from the ISSC announcing that his student loan account was past due and that the state had the right to offset a portion of his wages. The only means, according to these letters, by which the plaintiff could prevent the offset was to "remit the entire past due amount immediately." The court found that "[w]ithout question, such notice is not due process," 650 F.Supp. at 1239, and that not only was there no meaningful opportunity to be heard, "[t]here was literally *no* opportunity to be heard." *Id.* at 1240 (emphasis added). The fact that the plaintiff received notice after the offset that provided him with an address to which he could direct objections did not cure the due process violation. The court found that the opportunity to object only after the plaintiff was deprived of his wages was unconstitutional "unless some strong justification for the delayed process is presented. Defendant here offers none." *Id.* There was no emergency justifying the delayed hearing; the deprivation was not unpre-

---

4) the time period to which the claim is attributable;

5) the fund to which the debt is owed; attempts, if any, which the agency has made to collect the claims; and

6) any other information which is needed to describe the claim in favor of the State.
....

Ill.Admin.Code tit. 74, § 285.1102 (1985).
The amendments to the rules included, among other things, the following two clauses:

6) a description of the type of notification given to the person against whom the claim exists and the type of opportunity to be heard afforded such person;

7) a statement as to the outcome of any hearings or other proceedings held to establish the debt, or a statement that no hearing was requested....

*Id.*

Clause 6) replaced the original clause 6); Clause 7) was an addition.

dictable, but was instead pursuant to established procedures; and the plaintiff was not a post-judgment debtor, and had never had an opportunity to contest the validity of or present defenses to the debt.

### 2. The Defendant's Argument

The defendant argues that even if the old rules regulating offset procedures violated plaintiff's due process rights, which he by no means concedes, the new rules comport with due process. He argues that because there is thus no continuing violation of federal law, the court is barred by the eleventh amendment from granting even declaratory and injunctive relief against the Comptroller. *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 427, 88 L.Ed.2d 371 (1985); *Dial v. Coler*, 791 F.2d 78, 80 (7th Cir.1986); *Watkins v. Blinzinger*, 789 F.2d 474, 484 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987). As this court stated in *Watkins*,

> [w]hen there is "no ongoing violation of federal law" (*Green, supra*, 106 S.Ct. at 425), a suit against a state officer—a suit the decision of which will as a practical matter bind the state—should be treated for what it is: a suit against the state. The Supreme Court accordingly held in *Green* that when there is no ongoing or impending violation of federal law, a federal court may not issue declaratory or "notice" relief, even though that relief would be "prospective" and would not require payments from the state treasury.

789 F.2d at 484.

◼ If the new rules comport with due process, the defendant is correct in his assertion that the eleventh amendment bars the court from granting declaratory and injunctive relief to the plaintiffs. This case will require further consideration to determine whether the new rules do in fact guarantee the plaintiff due process. The cases which the defendant relies on are distinguishable from this case. In *Green*, the plaintiffs conceded that their claims for injunctive relief were rendered moot by amendments to the statute in question. *Green*, 106 S.Ct. at 426. In *Dial*, the de-

fendants at a pretrial settlement conference made a motion to dismiss the case on mootness and eleventh amendment grounds. The statutes in question in *Dial* had similarly been amended while trial was pending. After briefing and oral argument the district court granted the motion to dismiss. *Dial*, 791 F.2d at 80. In *Watkins*, the district court found that, because the state had discontinued the practice of which the plaintiffs complained, the issue was moot. Although we analyzed the case under the eleventh amendment rather than mootness principles, we agreed that there was no continuing violation of federal law. *Watkins*, 789 F.2d at 483–84.

◼ In this case, by contrast, the plaintiffs have not conceded that the amendments to the rules have rendered their claims moot, nor has the district court so held. There is no indication that the district court was even made aware of the new offset rules. Although a copy of the old rules with the amendments was attached as an exhibit to Defendant's Memorandum of Law in Response to Plaintiff's Motions, defendant, as far as we can determine, failed to advise the court as to how the amendments would bear upon the plaintiff's claims. Ordinarily, the defendant's failure to press an argument before the district court would result in a waiver of that argument. *Ohio Casualty Insurance Co. v. Bazzi Construction Co.*, 815 F.2d 1146, 1149 (7th Cir.1987); *National Fidelity Life Insurance Co. v. Karaganis*, 811 F.2d 357, 360 (7th Cir.1987). "[A] trial judge may properly depend upon counsel to apprise him of the issues for decision. He is not obligated to conduct a search for other issues which may lurk in the pleadings." *Libertyville Datsun Sales v. Nissan Motor Corp.*, 776 F.2d 735, 737 (7th Cir.1985) (quoting *Desert Palace, Inc. v. Salisbury*, 401 F.2d 320, 324 (7th Cir. 1968)).

◼ However, the waiver rule does not apply to the law on which a decision is based. "Federal courts must take judicial notice of the statutory and common law of any state of the union without pleading or proof." *Saffold v. McGraw-Edison Co.*,

566 F.2d 621, 623 (8th Cir.1977) (citing *Lamar v. Micou,* 114 U.S. 218, 223, 5 S.Ct. 857, 859, 29 L.Ed. 94 (1885)). This is especially true of the laws of the state in which the district court sits. The rule applies with equal force to "matters of public record such as state statutes, city charters, and city ordinances." *Newcomb v. Brennan,* 558 F.2d 825, 829 (7th Cir.1977), *cert. denied,* 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977); *see also Roemer v. Board of Public Works,* 426 U.S. 736, 742 n. 4, 96 S.Ct. 2337, 2343 n. 4, 49 L.Ed.2d 179 (1976) (taking judicial notice of rules promulgated by state Board of Public Works and published in the Maryland Register). Because the rules and the amendments in question are a matter of public record, and have the force and effect of law, *see Eastman Kodak v. Fair Employment Practices Commission,* 86 Ill.2d 60, 71, 55 Ill.Dec. 552, 426 N.E.2d 877 (1981), we hold that the district court should have taken the amendments into account in its due process analysis, although the fault for its not doing so rests with the defendant. The defendant is not foreclosed from arguing that because the rules as amended comport with due process there is no continuing violation of federal law.

We do not decide the issue, however. We leave it to the district court to determine in the first instance whether the offset rules as amended comport with due process.

■ The plaintiff has asked that we award him double costs and attorney's fees under Federal Rule of Appellate Procedure 38 to sanction the defendant for bringing a frivolous appeal. Although, as the plaintiff suggests, it may have been better practice for the defendant to have presented the new regulations to the district court pursuant to a motion under Federal Rule of Civil Procedure 60(b), the defendant's appeal was not frivolous. We therefore deny the plaintiff's request for double costs and attorney's fees.

**3.** The defendant argues that the new rules render this dispute moot. A case is not moot, however, "unless there is reasonable assurance that the questioned conduct will not be resumed." *Watkins v. Blinzinger,* 789 F.2d 474,

## III. CONCLUSION

In light of the foregoing analysis we remand to the district court for further proceedings consistent with this opinion.[3] Circuit Rule 36 will not apply.

REVERSED AND REMANDED.

483 (7th Cir.1986); *City of Los Angeles v. Lyons,* 461 U.S. 95, 100–01, 103 S.Ct. 1660, 1664, 75 L.Ed.2d 675 (1983). We leave this mootness question under the new rules to the district court to consider in the first instance.