NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0021n.06

Case No. 08-6034

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 12, 2010
LEONARD GREEN, Clerk

| | |
|---|---|
| STEVEN SCOTT, surviving husband of ELIZABETH SUZANNE SCOTT, deceased, ) ) ) | |
| Plaintiff-Appellant, ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. ) ) | COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| GEORGE M. MILLER, JR., M.D.; GEORGE M. MILLER, JR., M.D., P.C, fka Bariatric Surgery Clinic P.C., ) ) ) ) | |
| Defendants-Appellees. ) | |

BEFORE:  BATCHELDER, Chief Judge; COLE, Circuit Judge; LAWSON[*], District Judge.

ALICE M. BATCHELDER, Chief Judge.  Elizabeth Scott, the deceased wife of Steven

Scott, underwent bariatric "gastric bypass" surgery performed by Dr. George Miller in November

2001.  Following Mrs. Scott's death from complications due to the surgery, Mr. Scott filed suit

against Dr. Miller and the matter proceeded to a jury trial.  On appeal, Mr. Scott challenges the

district court's failure to give a jury instruction that would have allowed attribution of fault for Mrs.

Scott's death to a non-party, her mother Carolyn Wooten, who was trained as a nurse and who helped

to care for Mrs. Scott after her release from the hospital.  Because Mr. Scott failed to pursue an

objection to the jury instructions during the trial — and, indeed, stated that he had no objection to

the instructions as given, we affirm the district court's judgment on the jury verdict apportioning

---

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

fault equally between Mr. Scott and Dr. Miller.

## I.

Dr. Miller performed gastric bypass surgery on Elizabeth Scott at Centennial Medical Center in Nashville, Tennessee, on November 15, 2001. Following the surgery, Mrs. Scott returned home to Rossville, Georgia, on November 18, and her condition quickly began to deteriorate. There is some factual dispute as to the actual progression of her condition and her family's communication with Dr. Miller on November 18 and 19, 2001. But the end result was that Mrs. Scott entered a local hospital on the evening of November 19, and ultimately succumbed to an infection connected with complications from the surgery.

Mr. Scott filed a medical malpractice action against Dr. Miller, claiming that his negligence was responsible for Mrs. Scott's death. Dr. Miller countered, affirmatively pleading the doctrine of comparative negligence, and claiming that it was the failure of Mr. Scott and Mrs. Scott herself to follow his discharge instructions, and to seek prompt medical attention when Mrs. Scott's condition worsened, that was responsible for her death. During the trial, Mr. Scott called Ms. Wooten, Mrs. Scott's mother, to testify about her daughter's deteriorating condition and the information she had relayed to Dr. Miller during the course of the day leading up to Mrs. Scott's returning to the hospital. Dr. Miller extensively cross-examined her. The parties vigorously disagree about the thrust and intent of that cross-examination. Mr. Scott now contends that Dr. Miller attempted, through that cross-examination, to persuade the jury that Ms. Wooten was materially responsible for Mrs. Scott's death because she failed to seek help for her daughter in a timely manner, and failed to pass along to Dr. Miller critical information about her daughter's condition. Further, Mr. Scott argues that the district court restricted the use that Dr. Miller could make of Ms. Wooten's testimony during closing

2

argument, and that Dr. Miller failed to abide by the court's orders in that regard. According to Mr. Scott, Dr. Miller's closing argument was designed to persuade the jury that Ms. Wooten's failure to properly care for Mrs. Scott and to provide necessary information to Dr. Miller was responsible in some significant part for Mrs. Scott's death.

Dr. Miller, on the other hand, contends that his cross-examination of Ms. Wooten was intended solely to undermine her credibility. Dr. Miller contends that Ms. Wooten did not advise him of the serious medical situation she described in her direct testimony, and his questions, as well as his closing argument, were not intended to demonstrate that Ms. Wooten was negligent in caring for her daughter; rather, they were designed to show the jury that the reason Ms. Wooten did not seek help for her daughter sooner or pass along allegedly critical information to the doctor was that Mrs. Scott's condition was simply not so serious as Ms. Wooten, in her direct testimony, described it.

The attribution of fault to Ms. Wooten was addressed at length in the jury-charge conference before the district court. It is worth noting that during that conference, Mr. Scott's counsel observed that:

> And where it becomes important is where the jury does the calculations of whether somebody is 50 percent or less than 50 percent [at fault]. The Scott family, Steven Scott and the two girls, should not be penalized by virtue of a nonparty's asserted misconduct. And that would be appropriate to charge 3.53.

Under Tennessee's modified-comparative-fault regime, a plaintiff in a negligence action may recover damages only if his own fault was less than 50% of the total fault in the case. Therefore, if Dr. Miller were found to be only 50 percent at fault for Mrs. Scott's death, Mr. Scott, whose own negligence was at issue in the case through Dr. Miller's affirmative defense, could not recover any damages under the Tennessee comparative negligence scheme unless his own fault were reduced

3

below 50% by Ms. Wooten's negligence. However, at the conclusion of the conference, at the urging of Dr. Miller — who pointed out that he had never pled the comparative negligence of Ms. Wooten — and without any objection from Mr. Scott — even after the judge asked if there were "[a]ny other matters, either side?" — the district court removed from the jury instructions the entirety of Tennessee Pattern Instruction 3.53 (attribution of fault to a non-party), and struck from those instructions any mention of Ms. Wooten's name. And the court instructed Dr. Miller's counsel that he was not to raise in closing argument any negligence on the part of Ms. Wooten. Although Mr. Scott may have agreed to the changes in the jury instructions in order to prevent Dr. Miller from attempting in closing argument to reduce his own degree of fault by blaming Ms. Wooten, Mr. Scott failed to raise any objection either during or after closing argument, in which Dr. Miller did in fact refer to Ms. Wooten's actions on the evening of Mrs. Scott's death. Finally, after the jury had been charged, the trial judge asked the parties again if they had "[a]ny objection to the instructions as written?" and Mr. Scott again stated that he had none.

**II.**

The threshold issue in this appeal is whether Mr. Scott forfeited his objection to the jury instructions as written. If so, our review is only for plain error. *Puckett v. United States*, 129 S. Ct. 1423, 1428-29 (2009); *Alsobrook v. UPS Ground Freight*, No. 08-5285, 2009 WL 2230719, at *1-*2 (6th Cir. July 27, 2009).

At a minimum, the Federal Rules of Civil Procedure require at least one objection on the record to preserve an issue for review under a standard less stringent than that of plain error. *See* FED. R. CIV. PRO. 51(c), (d). Moreover, we have long held that in order to avoid waiver, an objection must not only be made prior to the jury's being charged, but also *renewed* after it is

4

charged. "'The law in this circuit generally requires a formal objection, which should in most circumstances be made both before and after the jury instructions are read to the jury.'" *Rogers v. Norfolk Southern Ry. Co.*, 126 F. Appx. 694, 697 (6th Cir. 2005) (quoting *Preferred RX, Inc. v. American Prescription Plan, Inc.*, 46 F.3d 535, 547 (6th Cir. 1995)). And "[c]ounsel's failure to make an objection at trial 'results in a waiver of the objection advanced on appeal, and the jury verdict can be reversed only for plain error.'" *Id.*

Although the record indicates that Mr. Scott initially requested Tennessee Pattern Charge 3.53, which deals with non-party fault, the record also establishes that at the conclusion of the charge conference, Mr. Scott acquiesced in the deletion of that instruction from the proposed jury charge, presumably in exchange for the court's prohibiting the defendant from arguing that Ms. Wooten was responsible in any way for decedent's death. Consequently, the trial court did not instruct on the attribution of fault to a non-party, nor did it mention Ms. Wooten's conduct. He now objects to those omissions, believing that they led to the jury's finding that he and Dr. Miller were equally at fault for Mrs. Scott's death. Because under Tennessee's modified-comparative-fault regime, a plaintiff in a negligence action may recover damages only if his own fault was less than 50% of the total fault in the case, Mr. Scott argues that any negligence on Ms. Wooten's part would necessarily now inure to his benefit by reducing the percentage of fault for Mrs. Scott's death attributable to him. Had the jury had been instructed that it could consider Ms. Wooten's negligence, Mr. Scott argues, the jury would — or at least could — have found that he was less than 50% at fault, and therefore entitled to recover damages from Dr. Miller. But Mr. Scott agreed to the omission of Pattern Instruction 3.53 and Ms. Wooten's name from the instructions.

Our review, therefore, is for plain error. *See Puckett,* 129 S. Ct. at 1428-29; *Alsobrook*, 2009

WL 2230719 at *1.  The principle underlying this rule  was aptly summarized by Justice Scalia in *Puckett*,

> This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them.  That court is ordinarily in the best position to determine the relevant facts and adjudicate the dispute.  In the case of an actual or invited procedural error, the district court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome.  And of course the contemporaneous-objection rule prevents a litigant from "sandbagging" the court — remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor.

129 S. Ct. at 1428 (citations omitted).  Mr. Scott "could not stand silent and 'take [his] chances' yet simultaneously preserve all rights for appeal as if [he] had timely objected and given the trial court a reasonable opportunity to address any real or imagined error." *United States v. Martinez*, 974 F.2d 589, 592 (5th Cir. 1992).

To demonstrate plain error, Mr. Scott must show (1) an error or defect in which he did not intentionally acquiesce; (2) that the error is clear and obvious; (3) that the error affected his substantial rights; and (4) if all of the other elements are met, that the exercise of the court's discretion to remedy the error is warranted.  *Puckett*, 129 S. Ct. at 1429 (citing *United States v. Olano*, 507 U.S. 725, 732-36 (1993)).  Our review of plain error is discretionary, s*ee* FED. R. CIV. P. 51(d)(2) ("A court *may* consider a plain error in the instructions that has not been preserved . . . .") (emphasis added), and we have said that plain error is a "very high standard," *Maday v. Public Libraries of Saginaw*, 480 F.3d 815, 820 (6th Cir. 2007).

Mr. Scott's acquiescence in the omission from the jury instructions of Pattern Instruction 3.53 and any mention of Ms. Wooten may have been for strategic reasons, i.e., preventing Dr. Miller from mentioning Ms. Wooten in closing argument.  But this strategy resulted in his failure to meet the first

element of plain error: "an error or defect — some sort of '[d]eviation from a legal rule' — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant." *Puckett*, 129 S. Ct. at 1429 (quoting *Olano*, 507 U.S. at 732-33). And regardless of the reason for his failure to object timely, Mr. Scott cannot demonstrate the second element, that "the legal error must be clear or obvious, rather than subject to reasonable dispute,." *Id.* (citing *Olano*, 507 U.S. at 734).

We cannot say that the instructions, had they read as Mr. Scott now contends they should have, would have produced the desired result. First, it is not clear that it would be permissible under Tennessee law for the jury to have reduced Mr. Scott's fault by a percentage attributable to Ms. Wooten, against whom neither he nor Dr. Miller had filed any claim of negligence. *See McIntyre v. Ballentine*, 833 S.W.2d 52, 57-58 (establishing Tennessee's modified-comparative-fault regime and the process for a *defendant's* claiming that a non-party was at fault); *see also Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1049 n.6 (6th Cir. 1996) (holding that unclear governing law cannot be the basis for a clear error finding). Further, it is far from clear that during the trial, Mr. Scott himself thought that Dr. Miller was attempting to persuade the jury that Ms. Wooten was partly at fault for Mrs. Scott's death. If the record in that regard is not clear to us on review, we can hardly fault the district court for failing to recognize the argument Mr. Scott now makes, when Mr. Scott wholly failed to call it to the court's attention. These factors combine to make the omission of this instruction far from a "clear or obvious" legal error, as opposed to one that is "subject to reasonable dispute."

Mr. Scott has established neither the first nor the second elements of plain error. We therefore need not reach the questions of whether Mr. Scott's substantial rights were affected by the

7

claimed error, or whether we should exercise our discretion to remedy the error.

**III.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.