NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0221n.06

No. 15-2438

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 14, 2017
DEBORAH S. HUNT, Clerk

MARYANNE GODBOLDO, et al.,

     *Plaintiffs-Appellees*,

v.

COUNTY OF WAYNE, et al.,

     *Defendants-Appellants*.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    DAUGHTREY, CLAY, and COOK, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiffs Maryanne Godboldo and her daughter, identified as "AG-H," initiated this suit, pursuant to 42 U.S.C. § 1983, against Defendants Wayne County and Mia Wenk, among others, for unreasonably seizing AG-H in violation of the Fourth Amendment based on allegations that the putative order providing for the taking of AG-H into state protective custody was unsupported by probable cause and was not reviewed or authorized by a judicial officer.[1] Wenk filed this interlocutory appeal challenging the district court's October 2, 2015 order denying in part Wenk's motion to dismiss and/or for summary judgment based on qualified immunity. For the reasons set forth below, we hold that Wenk is entitled to immunity on all of the claims asserted against her. We therefore **REVERSE** the district court's partial denial of

---

[1] Wayne County and the other defendants, with the exception of Wenk, have been dismissed from this suit. (R. 18, Stipulation of Dismissal, PageID #266; R. 47, Op. & Order Granting in Part & Denying in Part Mot. to Dismiss, PageID #895.)

Wenk's motion to dismiss and **REMAND** this action to the district court for further proceedings consistent with this opinion.

## BACKGROUND

In September 2009, Maryanne Godboldo started noticing behavioral changes in her eleven-year-old daughter, AG-H, after she was given vaccinations. Godboldo sought treatment for her daughter at the New Oakland Child-Adolescent and Family Center ("the Center"). AG-H was prescribed Risperdal, an anti-psychotic medication. Godboldo was told that she could withdraw her consent to the administration of the drug at any time.

After AG-H started taking the medication, Godboldo noticed that her daughter was experiencing side effects, which included a thirty-two pound weight gain, extreme behavioral changes, and agitation. Godboldo subsequently contacted the Center to complain about the side effects and to withdraw her consent for this medication to be administered to her daughter. With the assistance of an outside medical consultant, Godboldo began weaning AG-H off the medication.

The Center, after learning that Godboldo had taken AG-H off the medication, contacted Child Protective Services ("CPS") to report Godboldo's action as alleged neglect. Mia Wenk, a social worker with CPS, was assigned to this case and scheduled a Permanent Placement Conference for March 23, 2011, but did not conduct any further investigation into the allegations of abuse. At this conference, which Godboldo did not attend, Wenk and others decided to petition the court for removal of AG-H from Godboldo's custody, even though the only information available was that Godboldo had "abruptly" taken AG-H off of the Risperdol. The following day, on March 24, 2011, Wenk submitted an "Order to Take Child(ren) into Protective Custody" to the Wayne County Circuit Court. This order was approved, though not by a judge.

Instead, a probation officer used a judge's stamp to approve the order without any judicial input or review.

Wenk then enlisted the help of the Detroit police in order to take AG-H into protective custody. After Godboldo refused entry to the police and Wenk, the police used a crowbar to break into the home. Godboldo was arrested and charged for having endangered the lives of the police officers. AG-H was taken to the Hawthorne Center, where she stayed until December 12, 2011.

Godboldo and AG-H ("Plaintiffs") filed suit in the United States District Court for the Eastern District of Michigan on March 12, 2014, and named Mia Wenk, along with the County of Wayne, the Wayne County Circuit Court, and three additional individuals, as Defendants. Relevant to this appeal, the complaint asserts the following claims against Wenk: violation of Plaintiffs' Fourth and Fourteenth Amendment rights to due process, equal protection, to be free from unreasonable searches and seizures, and to be free from the use of excessive force (Count III); liability under state law, including statutes, common law, rules, regulations, and ordinances, for the violation of Plaintiffs' rights "to be free from the negligent, reckless, knowingly and/or intentionally tortuous [sic], wilful [sic], wanton and/or grossly negligent execution of ministerial-operational duties contrary to the Michigan Constitution" (R. 1, Compl., ¶ 48) (Count IV); and intentional infliction of emotional distress (Count V).

Wenk filed a "Motion to Dismiss and/or for Summary Judgment" on May 19, 2014, which asserted that Wenk was entitled to qualified immunity, Eleventh Amendment immunity, and statutory and common law immunity under state law. The district court found that a motion for summary judgment was premature, and decided the motion as a motion to dismiss for failure to state a claim upon which relief can be granted. In its opinion and order issued on October 2,

2015, the court first found that Wenk was entitled to absolute immunity in connection with her actions in filing the petition to take AG-H into protective custody. The court further determined that Plaintiffs had failed to plead a claim against Wenk for substantive and procedural due process violations and that the complaint, insofar as it asserted such claims, should be dismissed. The district court further dismissed the § 1983 claim against Wenk for violation of Plaintiffs' rights to equal protection under the law because Plaintiffs failed to allege that they were members of a suspect class or that they were treated differently from others similarly-situated to them. The district court, however, denied Wenk's motion to dismiss the § 1983 claim against Wenk for the allegedly unreasonable seizure.

As for the state law claims against Wenk, the district court first noted that Count IV did not actually specify which state laws Wenk allegedly violated. The court, however, went on to find that Wenk failed to meet her burden of establishing that she was entitled to governmental immunity as to any intentional torts asserted against her. The court therefore denied her motion to dismiss as to Counts IV and V. Finally, the court denied Wenk's motion to dismiss insofar as it sought to dismiss the intentional infliction of emotional distress claim in Count V because the complaint alleged facts that, if true, would establish all of the elements of that claim.

On October 16, 2015, Wenk filed a motion for reconsideration, in which she argued that the district court should have considered the records attached to the motion to dismiss and that such consideration would not have improperly converted the motion into one for summary judgment. She also argued that the Fourth Amendment claim should be dismissed because there was probable cause to believe that abuse or neglect was occurring. Wenk also asked for reconsideration of the court's order denying her qualified immunity on the federal claims asserted against her and denying her governmental immunity on the state law claims. Wenk

further challenged the district court's determination that the complaint alleged facts that would establish that her actions were extreme and outrageous, as required for the intentional infliction of emotional distress claim against her. The court denied her motion for reconsideration on October 27, 2015, and this timely appeal followed.

## DISCUSSION

### I. Jurisdiction

We generally have jurisdiction to hear an appeal of an order denying qualified immunity pursuant to 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). However, we may exercise jurisdiction over such an appeal only if "it turns on an issue of law." *Kennedy v. City of Cincinnati*, 595 F.3d 327, 333 (6th Cir. 2010) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 309 (6th Cir. 2005)). A defendant entitled to invoke qualified immunity "may not appeal a district court's . . . order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–320 (1995). "[T]o the extent that the denial of qualified immunity is based on a factual dispute, such a denial falls outside of the narrow jurisdiction of this Court." *Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008) (citations omitted).

Plaintiffs argue that this Court lacks jurisdiction to hear this appeal because Wenk seeks to challenge the facts alleged in the complaint and is not presenting a pure legal argument about whether a clearly established constitutional right was violated. Wenk, however, argues that jurisdiction is proper, as she is not disputing the facts. We find that Wenk is, in fact, presenting a purely legal question about whether the facts as pled by Plaintiffs establish that Wenk is liable in spite of collateral estoppel and the qualified immunity doctrine. Therefore we have jurisdiction to entertain this interlocutory appeal.

## II.    Analysis

### A.    Standard of Review

"When a defendant appeals the denial of a motion to dismiss based on qualified immunity, we review de novo whether the complaint alleges violation of a clearly established constitutional right."  *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011) (citations omitted).  "In reviewing the motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff."  *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); and *Heyne*, 655 F.3d at 562–63).

### B.    Qualified Immunity

Public officials who violate a plaintiff's constitutional rights while acting under the color of state law may be liable under 42 U.S.C. § 1983.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). However, the qualified immunity defense bars individual liability where "a reasonable official in the defendant's position would not have understood his or her actions to violate a person's constitutional rights."  *Gregory v. City of Louisville*, 444 F.3d 725, 738 (6th Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)).  "Qualified immunity 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'"  *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

To determine whether an officer is entitled to qualified immunity, a court must consider "(1) whether the facts, when taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (2) whether the right violated was

clearly established such 'that a reasonable official would understand that what he is doing violates that right.'" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)). These two prongs of the qualified immunity test may be addressed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Plaintiffs bear the burden of showing that a clearly established right has been violated and that the official's conduct caused that violation. *See Chappell*, 585 F.3d at 907.

Plaintiffs in the instant case allege that Wenk violated their Fourth Amendment right to be free from unreasonable seizures, which applies to the states and their political subdivisions through incorporation by the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *Ker v. State of Cal.*, 374 U.S. 23, 30–31 (1963). Neither the complaint nor the accompanying briefing specify how, exactly, Plaintiffs contend Wenk violated that right. However, the district court attempted to clarify and describe the violation as follows:

> Plaintiffs say that Wenk took advantage of the deficient review process in place at the Wayne County Circuit Court by presenting a facially invalid petition, knowing that it would not be subject to review by a judge. Indeed, a fair reading of the Complaint is that Wenk knew that there was no probable cause to take AG-H into custody.

(R. 47, Op. & Order Granting in Part & Denying in Part Mot. to Dismiss, PageID #888.) During oral argument, Plaintiffs represented that Wenk violated their Fourth Amendment rights by initiating the investigation in the first place. However, under either theory we conclude that Plaintiffs are collaterally estopped from claiming that their Fourth Amendment rights were violated because the Michigan state courts have already determined the dispositive issues in this case—that there was probable cause to take AG-H into custody and that the order authorizing the taking of AG-H was valid despite the lack of judicial review or authorization.

As an initial matter, we are not coming to this case with a blank slate. Instead, Plaintiffs have litigated both the existence of probable cause and the validity of the court order taking AG-H into custody in state court, as those issues were relevant for both AG-H's custody determination and Godboldo's criminal prosecution. Wenk now asks this Court to give preclusive effect to the relevant opinions. Wenk first points to the decision by the referee, which was affirmed by a judge, that probable cause existed to take AG-H into protective custody based on the allegations of abuse relating to the withdrawal of her medication. (*See* R. 17-5, Probable Cause Hr'g Tr., PageID #210–11; R. 17-7, Request & Order for Review of Referee Recommendation, PageID #218.) This probable cause determination was not challenged on appeal, and jurisdiction over AG-H was held to be proper. *In re Godboldo-Hakim*, Nos. 305858, 308040, 2012 WL 2914260, at *1–2 (Mich. Ct. App. July 17, 2012). In the second opinion, *People v. Godboldo*, No. 323261, 2016 WL 299707 (Mich. Ct. App. Jan. 21, 2016), the Michigan Court of Appeals specifically held that the order to take AG-H into custody was valid both under Michigan law and the Fourth Amendment of the United States Constitution. *Id.* at *4–6. In doing so, the Michigan Court of Appeals reversed the state district court's determination, which was affirmed by the Wayne County Circuit Court, "that the order to take the child into protective custody was invalid since it was not signed by a judge and there was no judicial review of the order." *Id.* at *3. Plaintiffs, for their part, do not address the elements required for collateral estoppel, but instead argue that consideration of these state court decisions is improper on a Rule 12(b)(6) motion.

Plaintiffs' argument that we cannot consider the Michigan state court opinions is unavailing. Contrary to Plaintiffs' representations, we are not being asked to take judicial notice of adjudicative facts, as contemplated by Federal Rule of Evidence 201. *See Getty Petroleum*

*Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 322 (1st Cir. 2004) (Lipez, J., concurring) (explaining the difference between judicial notice of facts, which is governed by Federal Rule of Evidence 201, and judicial notice of law). Instead, Wenk seeks to enforce the decisions of two dispositive Michigan state court opinions, as they directly relate to the § 1983 action filed against her. As we have previously held, we "are required to take judicial notice of the statute and case law of each of the states." *Schultz v. Tecumseh Prods.*, 310 F.2d 426, 433 (6th Cir. 1962) (citations omitted); *see also Lamar v. Micou*, 114 U.S. 218, 223 (1885) ("The law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof."). Therefore, consideration of these Michigan court opinions is not only proper, it is required.

Moreover, the district court erred to the extent that it failed to consider the relevant state court orders attached to Wenk's motion on the basis that they were extra-pleading materials not referenced in the complaint. While it is generally true that an "[a]ssessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings," *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citation omitted), we have recognized exceptions to that blanket rule. One such exception includes public records, including court orders. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)). Therefore, consideration of the state court orders taking AG-H into state custody and finding that probable cause existed are properly considered on a 12(b)(6) motion. For the same reason, or based on judicial notice, we can consider the Michigan Court of Appeals' decision, which was released during the pendency of this appeal, determining that the protective custody order allowing Wenk to take AG-H from Godboldo's home was valid.

"The Full Faith and Credit Act mandates that 'judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Tr. Dated June 27, 2002*, 410 F.3d 304, 310 (6th Cir. 2005) (alterations in original) (quoting 28 U.S.C. § 1738). "The United States Supreme Court has interpreted the act as requiring that 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Id.* (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Therefore, we turn to Michigan law to determine whether prior decisions in the Michigan state courts foreclose Plaintiffs' claims here.

Under Michigan law, the application of collateral estoppel requires that "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845–46 (Mich. 2004) (alteration in original) (internal quotations and footnote omitted). Collateral estoppel further requires that "the same issue was actually litigated in the first proceeding," and that the "issue was necessary to the judgment." *Spectrum Health Continuing Care Grp.*, 410 F.3d at 310 (quoting *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir. 2004)). The Michigan Supreme Court has since determined that "mutuality [is] not required when collateral estoppel [is] being used defensively," as it is here. *Gilbert v. Ferry*, 413 F.3d 578, 581 (6th Cir. 2005) (per curiam) (citing *Monat*, 677 N.W.2d at 850).

It is clear from the record that the issues to which Wenk seeks to give preclusive effect—probable cause to take AG-H into custody and the validity of the court order—were actually

litigated and determined by a valid and final judgment. The parties also had a full opportunity to litigate the issue. As noted by the Michigan Court of Appeals, the issue of probable cause was addressed extensively and ended with a state court referee determining that probable cause existed. *In re Godboldo-Hakim*, 2012 WL 2914260, at *2. That determination was subsequently reviewed by a judge. Godboldo chose not to challenge the probable cause determination on appeal. *Id.* at *1. Based on the transcripts from the probable cause hearing, as well as the subsequent court orders, it is clear that the issue of probable cause was actually litigated and necessary to the judgment, as the entire purpose of those proceedings was to determine whether probable cause existed for the state to take AG-H out of Godboldo's custody. (*See* R. 17-5, at 210–11; R. 17-7, at 218); *see also In re Godboldo-Hakim*, 2012 WL 2914260, at *1.

Similarly, the validity of the court order was challenged first in front of a state district court, then a circuit court, and was eventually resolved by the Michigan Court of Appeals. *People v. Godboldo*, 2016 WL 299707, at *3–6. The Michigan Supreme Court subsequently denied leave to appeal, thus meaning the decision is final. *People v. Godboldo*, 878 N.W.2d 856 (Mich. 2016) (mem). The Michigan Court of Appeals also necessarily determined that the lack of judicial review of the order allowing Wenk to take AG-H into custody did not render the order invalid under state law and the Fourth Amendment. The state district and circuit courts clearly held that the order was invalid based on the fact that it was signed by a probation officer and not a judge. *Godboldo*, 2016 WL 299707, *3. However, the Michigan Court of Appeals reversed that ruling and held both that "the order to take [AG-H] into protective custody complied with the court rule that was in effect at the time that the order was entered," *id.* at *4, and that "the order was also a constitutional warrant under the Fourth Amendment to the United States Constitution," *id.* at *5. In doing so, the Michigan Court of Appeals necessarily rejected the

basis upon which the two lower courts invalidated the order—the lack of judicial review or oversight—despite the fact that the court did not explicitly state the reasons for its holding. The holding was also necessary to the judgment of the court, as the Michigan Court of Appeals relied on the finding that the order was valid and lawful to conclude that Godboldo could not argue that she was properly resisting the unlawful arrest of her daughter. *Id.* at *7.

Moreover, both AG-H and Godboldo were parties, or were in significant enough privity to a party, to the child-protective custody determination. *See In re Godboldo-Hakim*, 2012 WL 291420, at *1; *see also Marran v. Marran*, 376 F.3d 143, 151–52 (3d Cir. 2004) (collecting cases and holding that "[e]ven if a child is not a party to a custody action her federal claims will be barred if the child is in privity with the named parties (her parents)"); *Aguilar v. Los Angeles Cty.*, 751 F.2d 1089, 1093 (9th Cir. 1985) (citation omitted) (noting that collateral estoppel has been expanded "to prevent children from relitigating an issue decided in a previous action brought by their mother"). Thus, both AG-H and Godboldo are bound by the Michigan court's determination that there was probable cause to take AG-H into protective custody. Furthermore, Godboldo is bound by the Michigan Court of Appeals' decision holding that the order taking AG-H into custody was valid under the Fourth Amendment, as she was the defendant in that case.

Based on the foregoing analysis, we conclude that Plaintiffs are collaterally estopped from re-litigating the existence of probable cause to take AG-H into custody and the validity of the related court order, based on the Michigan courts' previous decisions on these issues. However, we must pause to note that this case may very well have been decided differently had this Court been able to address Plaintiffs' constitutional claims outside the confines of the Michigan courts' previous decisions. The Supreme Court has recognized that an individual

issuing a warrant is not required to be a lawyer or a judge, but still "must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search." *Shadwick v. City of Tampa*, 407 U.S. 345, 349–50 (1972). The "neutral and detached" requirement is meant to ensure that the issuing magistrate is not associated with any law enforcement activity. *Id.* at 350–51. This Court, however, has noted that the person signing a warrant must also be authorized by state law to do so. *United States v. Master*, 614 F.3d 236, 240 (6th Cir. 2010). Regrettably, the Michigan Court of Appeals failed to adequately explain why, exactly, the "rubber-stamping" procedure used by probation officers in the Wayne County Circuit Court was valid under either Michigan law or the Fourth Amendment, despite being presented with the question and two lower court decisions invalidating the court order based on the lack of judicial review. Instead, the Michigan Court of Appeals simply stated that the order was valid under the laws of both Michigan and the United States. Notwithstanding the complete lack of any clear legal analysis by the Michigan Court of Appeals and our concern that the procedure used in Wayne County, Michigan at the time AG-H was removed from her mother's custody may have been constitutionally suspect, we must still give preclusive effect to the state court's holding, as the issue of the order's validity was raised and necessarily decided. *See Spectrum Health Continuing Care Gp.*, 410 F.3d at 310; *People v. Godboldo*, 2016 WL 299707, at *3–6. However, our opinion should not be interpreted to foreclose all future challenges to the procedures used in Wayne County or elsewhere in Michigan, should such an appropriate case arise that is not barred by preclusion.

We further find that the issues decided by the Michigan courts are dispositive of Plaintiffs' Fourth Amendment claim that AG-H was unlawfully seized. "[A] social worker, like other state officers, is governed by the Fourth Amendment's warrant requirement." *Kovacic v.*

*Cuyahoga Cty. Dep't of Children & Family Servs.*, 724 F.3d 687, 695 (6th Cir. 2013) (alteration in original) (quoting *Andrews v. Hickman Cty.*, 700 F.3d 845, 859 (6th Cir. 2012)). "The removal of a child from his custodial parents' home is a seizure for Fourth Amendment purposes, which is constitutionally reasonable if it is pursuant to a court order, is supported by probable cause, or is justified by exigent circumstances." *Krantz v. City of Toledo Police Dep't*, 197 F. App'x 446, 453 n.5 (6th Cir. 2006) (citing *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1010 (7th Cir. 2000)) (additional citation omitted). However, as the Michigan state courts have already determined, albeit unpersuasively, that there was both probable cause and a valid warrant to take AG-H into protective custody, Plaintiffs cannot establish that a Fourth Amendment violation occurred. Moreover, Plaintiffs' attempt to re-characterize the violation as related to Wenk's allegedly improper or insufficient investigation is unavailing, inasmuch as the Michigan courts have decided that the order to take AG-H into custody was supported by sufficient probable cause to be valid. Whether Wenk could have investigated more thoroughly is irrelevant to the determination of whether a Fourth Amendment violation occurred as long as the Michigan courts have determined that probable cause existed to support the order.

Because Plaintiffs have not established that their constitutional rights were violated, we reverse the district court's denial of qualified immunity as to the Fourth Amendment claim asserted against Wenk.

## C. State Governmental Immunity

"Under Sixth Circuit precedent, a district court's ruling denying Michigan governmental immunity under Michigan Compiled Laws § 691.1407 is a 'final order' that may be immediately appealed under 28 U.S.C § 1291." *Kindl v. City of Berkley*, 798 F.3d 391, 403 (6th Cir. 2015)

(citing *Smith v. Cty of Lenawee*, 600 F.3d 686, 689–90 (6th Cir. 2010)). A government official is entitled to governmental immunity for an intentional tort if he establishes the following:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

> (b) the acts were undertaken in good faith, or were not undertaken with malice, and

> (c) the acts were discretionary, as opposed to ministerial.

*Odom v. Wayne Cty.*, 760 N.W.2d 217, 228 (Mich. 2008). Lack of good faith is defined as "'malicious intent, capricious action or corrupt conduct' or 'willful and corrupt misconduct.'" *Id.* at 225 (first quoting *Veldman v. Grand Rapids*, 265 N.W. 790, 794 (Mich. 1936); then quoting *Amperse v. Winslow*, 42 N.W. 823, 827 (Mich. 1889)). Specifically, "willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of willingness that it does." *Id.* (quoting *Burnett v. City of Adrian*, 326 N.W.2d 810, 812 (Mich. 1982)).

Plaintiffs attempt to assert various state law claims against Wenk, stating that Wenk violated Plaintiffs' rights "under statutes, common law, rules, regulations and/or ordinances of the State of Michigan, to be free from the negligent, reckless, knowingly and/or intentionally tortuous [sic], wilful [sic], wanton and/or grossly negligent execution of ministerial-operational duties contrary to the Michigan Constitution." (R. 1, at ¶ 48.) As the district court noted, "the legal basis of Plaintiffs' claims in Count IV is unclear: they do not cite any particular theory or state law. Nor does Plaintiffs' response shed any light on the matter." (R. 47, at 892.) We are thus faced with the difficulty of evaluating whether state governmental immunity applies based on pleadings that would not satisfy the requirements of Federal Rule of Civil Procedure 8. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) ("The factual

allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged . . . .").  However, Plaintiffs also assert a claim against Wenk for intentional infliction of emotion distress, which the district court interpreted to be based "not only on Wenk's execution of the order (especially the use of police officers to remove the child from the home), but also on Wenk's conduct in initiating the investigation and taking advantage of the practices of the court in allowing probation officer review of custody petitions in order to remove AG-H from the home."  (R. 47, at 893.)

To the extent that Plaintiff asserts intentional torts, including the intentional infliction of emotion distress claim, against Wenk based on the same conduct underlying the Fourth Amendment § 1983 claim against her, we conclude that such claims should be dismissed.  As explained above, the Michigan courts have already determined that Wenk acted lawfully in procuring an order to take AG-H into custody, as the order was supported by probable cause and was valid under Michigan law and the Fourth Amendment.  Assertion of liability under tort is appropriate only when there has actually been wrongdoing on the part of the alleged tortfeasor. *See In re Bradley Estate*, 835 N.W.2d 545, 555 (Mich. 2013) ("We therefore hold that 'tort liability' as used in MCL 691.1407(1) means all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages."); *cf. Allen v. McCurry*, 449 U.S. 90, 102 n.18 (1980) (recognizing that "a state court decision that the police acted legally cannot but foreclose a claim that they acted in bad faith").  Because Wenk's actions were authorized by law, she was entitled to immunity from any tort actions based on those actions.  We therefore reverse the district court's denial of immunity for the tort claims asserted against Wenk based on her actions in investigating, obtaining, and executing the order taking AG-H into custody.

**CONCLUSION**

Because the Michigan state courts previously determined that probable cause existed to take AG-H into custody and that the order authorizing the taking of AG-H was valid, we **REVERSE** the district court's denial of qualified immunity and the denial of state governmental immunity, and **REMAND** the action for further proceedings consistent with this opinion.

**COOK, Circuit Judge, concurring.** I join the majority opinion with one exception. Given the court's conclusion that "Plaintiffs are collaterally estopped from re-litigating the existence of probable cause," I do not join the discussion of how this case may "have been decided differently had this Court been able to address Plaintiffs' constitutional claims." *See* Op. at 12–13.