**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0643n.06

Case Nos. 20-5010/5032

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Nov 12, 2020
DEBORAH S. HUNT, Clerk

MENDY BARNETT, individually and as next friend of M.G.W. and M.W.,

Plaintiff-Appellant/Cross-Appellee,

v.

DANIEL SMITHWICK,

Defendant-Appellee/Cross-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

BEFORE: SUTTON, THAPAR, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** As often happens, we have before us competing interests: the duty of public officials to act reasonably to protect children from harm, and the fundamental rights of parents to raise their children without government interference. Because the district court proceedings properly calibrated those considerations, we affirm the various judgments entered in favor of the state officer.

**BACKGROUND**

Mendy Barnett and Marc Winters had a long and troubled history with the Tennessee Department of Children's Services (DCS). Over a seven-year span, DCS investigated the couple nine times regarding allegations of neglect, lack of supervision, and drug exposure relating to their two children, daughter M.G.W. and son M.W. That pattern continued when DCS received a report

from a concerned babysitter that the children appeared hungry and dirty. DCS promptly dispatched social workers to examine the children.

DCS's efforts, however, were not well-received. Barnett and Winters refused every attempt by DCS social workers to see the children. Failing on those fronts, DCS enlisted the help of Daniel Smithwick, DCS's lead regional attorney. Through Smithwick, DCS obtained an ex parte order from the juvenile court granting the social workers enhanced investigatory powers. The order required the parents to "allow entrance to the home, school, or place where the children are located" for examination of the children. The order also authorized social workers to take physical custody of the children to conduct medical and forensic examinations.

DCS spent the next three weeks trying to locate the children. With the help of law enforcement, DCS eventually tracked the children to their paternal grandparents' home. When a DCS social worker arrived at the home, the grandparents denied knowing the parents or children and refused to identify themselves. But when the social worker spotted a small girl who she suspected to be M.G.W., the grandparents eventually admitted that the girl was the missing daughter.

During the encounter, the social worker took care to observe M.G.W.'s living conditions. She was alarmed by what she saw. The social worker observed M.G.W. playing unsupervised, climbing on pieces of "broken machinery" in the yard, and running around barefoot in tall grass with snakes present. When asked to see where the children slept, the grandparents led the social worker to a camper parked in the driveway. Among other worrisome conditions, the camper lacked utilities and was nearly impassible, littered with rotten food, empty alcohol bottles, and other garbage.

M.G.W. was dirty, sporting scrapes and bruises. When asked about the bruises, the grandparents explained them away as grease marks from working on a car, an unusual explanation for a toddler like M.G.W. Suspecting abuse, the social worker asked to question the children's parents, and to examine M.G.W.'s infant brother, M.W. The grandparents explained that M.W. was out running errands with Barnett, and initially refused to contact the parents or comply with the investigation. When the grandmother eventually relented and called Winters, he refused to speak with the social worker or return from work. Unable to engage the family, the social worker called Smithwick. He advised her to invoke the previously obtained juvenile court order and remove M.G.W. to a hospital for examination.

At the hospital, physicians determined that M.G.W.'s injuries did not show signs of abuse and were consistent with normal child's play. When a DCS supervisor contacted the parents about releasing M.G.W. to them, Barnett "blew up" on her, yelled profanities, and hung up. DCS called back repeatedly, with no one answering.

In the unusual circumstance of a parent refusing custody of a child, DCS policy requires officers to explore all other viable familial placement options. Social workers, however, were reluctant to return M.G.W. to her grandparents' home. And DCS officers had run through all other placement options, concluding that every known family member was disqualified under various DCS policies. Once familial options are exhausted, a DCS attorney may, as a last resort, authorize extrajudicial removal into state custody without a hearing. Lacking other options, social workers asked Smithwick to authorize an emergency removal. Smithwick knew of the conditions at the grandparents' home and had been in regular communication with DCS social workers. Nonetheless, he insisted that DCS continue with its efforts to reach the parents.

DCS officers called the parents at fifteen-minute intervals for several hours, without success. Finally, at around 11:30 p.m., Smithwick agreed that social workers had "exhausted their efforts and . . . had hit a wall." Smithwick acceded to the social worker's request and deemed M.G.W. legally "abandoned" by her parents at the hospital, authorizing DCS to take physical and legal custody of the child.

The next day, DCS received a temporary order from the juvenile court to formalize the custody transfer of M.G.W. and to assume custody of her brother, M.W. A formal hearing was set one business day later. Custody proceedings carried on for about one month, culminating in DCS voluntarily dismissing the case and releasing M.G.W. and M.W. back into their parents' custody.

This litigation followed. Barnett, the children's mother, sued Smithwick and others under state law and 42 U.S.C. § 1983, claiming procedural due process and Fourth Amendment violations. At summary judgment, the district court dismissed all Fourth Amendment claims against Smithwick but denied him qualified immunity on the procedural due process claims relating to M.G.W.'s removal. At trial, the primary dispute between the parties was whether exigent circumstances justified the emergency removal without a formal hearing. The district court denied Smithwick's motion for judgment as a matter of law, but a jury later granted judgment in Smithwick's favor, finding that exigent circumstances justified his removal decision.

In her timely appeal, Barnett challenges the award of summary judgment to Smithwick on her Fourth Amendment claims. She also challenges various aspects of the trial proceedings with respect to her procedural due process claim. Smithwick cross-appeals the district court's denial of his motion for judgment as a matter of law on the procedural due process claims.

**PROCEDURAL DUE PROCESS**

*Jury Instructions.* Barnett alleges that the district court committed reversible error when it instructed the jury that Barnett, to prevail on her procedural due process claim, had the burden of proving that Smithwick did not have a reasonable suspicion of exigent circumstances warranting the removal of M.G.W. At the close of trial, the jury concluded that Barnett failed to make that showing. Because Barnett did not preserve the issue by objecting to the aforementioned instruction, we have discretionary power to review Barnett's challenge for plain error. Fed. R. Civ. P. 51(d)(2); *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1075 (6th Cir. 2015). Demonstrating plain error is a tall order. *Maday v. Pub. Libraries of Saginaw*, 480 F.3d 815, 820 (6th Cir. 2007). Barnett must show an "error or defect—some sort of '[d]eviation from a legal rule'" that is "obvious and prejudicial," and "requires action by the reviewing court in the interests of justice." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citing *United States v. Olano*, 507 U.S. 725, 732–33 (1993)); *New Breed Logistics*, 783 F.3d at 1075 (citing *Reynolds v. Green*, 184 F.3d 589, 594 (6th Cir. 1999)); *see also Scott v. Miller*, 361 F. App'x 650, 653–54 (6th Cir. 2010) (discussing plain error review of jury instructions in the civil litigation context). On top of that, Barnett must also show that she did not intentionally acquiesce to the error. *Olano*, 507 U.S. at 733.

Measured by this standard, the district court did not plainly err by assigning Barnett the burden of proving exigency. As a starting point, it appears that Barnett intentionally acquiesced to the disputed jury instructions. Over the course of an extensive charging conference, Barnett agreed to the instructions presented, never once objecting to an instruction until after the jury returned its verdict.

And even if Barnett did not acquiesce to the instruction that she now challenges, she fails to demonstrate "obvious" error in giving the instruction. Barnett points us to cases holding that the government bears the burden of proving exigency in the Fourth Amendment context. *See, e.g.*, *Hardesty v. Hamburg Twp.*, 461 F.3d 646, 655 (6th Cir. 2006) ("The government bears the burden of proving that exigent circumstances such as a medical emergency existed to justify a warrantless search." (citation omitted)). But she cites no authority definitively answering that question in the procedural due process setting. That shortcoming is fatal, as "[a] lack of binding case law that answers the question presented will . . . preclude our finding of plain error." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015). Accordingly, the district court did not plainly err in assigning the burden of proof on exigency to Barnett.

*Motion for New Trial.* After entry of judgment in favor of Smithwick, Barnett filed a Rule 59 motion raising a host of issues she claims entitle her to a new trial. The district court found these arguments to be meritless across the board, in part because Barnett failed to cite the record or "state with particularity the grounds for seeking" relief. *See* Fed. R. Civ. P. 7(b)(1)(B). We review that denial of Barnett's motion for new trial for an abuse of discretion. *Walker v. Bain*, 257 F.3d 660, 670 (6th Cir. 2001).

Unfortunately for Barnett, history repeated itself. Her appellate briefs are as devoid of record citations and legal authority as were her trial court filings. On that basis alone, Barnett has waived her evidentiary claims. *See* Fed. R. App. P. 28(e) ("A party referring to evidence whose admissibility is in controversy must cite the pages of the appendix or of the transcript at which the evidence was identified, offered, and received or rejected."); *Nat'l Credit Union Admin. Bd. v. Zovko*, 728 F. App'x 567, 569 (6th Cir. 2018) ("With no citation to the record or specific allegation regarding the objectionable evidence, this Court cannot review the district court's evidentiary

rulings."). Her remaining arguments are perfunctory. She complains, for example, about a "verdict contrary to law" and an error in denying a motion to bifurcate trial. But she otherwise does little to demonstrate why the district court made a "clear error of judgment" amounting to an abuse of discretion. *See Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 457 (6th Cir. 2020) (citation omitted). These arguments also fail in light of the absence of developed briefing. *See Zovko*, 728 F. App'x at 569 ("[T]he court is not obligated to search the record to make Appellants' argument for them." (citation omitted)); *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396–97 (6th Cir. 2016).

* * * * *

Smithwick, we note, filed a cross-appeal from the district court's denial of the Rule 50(a) motion for judgment as a matter of law regarding Barnett's procedural due process claims. Because we decline to grant Barnett a new trial or otherwise disturb the jury verdict, Smithwick has prevailed on the procedural due process claims. We thus offer no opinion on the merits of his cross-appeal.

## ABSOLUTE IMMUNITY

The district court granted summary judgment to Smithwick on all claims relating to M.W.'s removal from his parents' custody. The district court held that Smithwick's actions, even the omission of inculpatory information from the petition, were clothed in the absolute nature of prosecutorial immunity. We see no error in that conclusion.

American law has long recognized "absolute immunity" for those "whose special functions or constitutional status requires complete protection from suit." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). That brand of immunity extends to government officers like prosecutors whose activities are "intimately associated" with the judicial process. *Imbler v. Pachtman*, 424 U.S. 409,

430 (1976). We have extended this so-called "prosecutorial immunity" to a social worker engaged in legal advocacy on behalf of children, where the worker's conduct is "intimately associated" with the judicial phase of proceedings like "initiating court actions." *Holloway v. Brush*, 220 F.3d 767, 774–75 (6th Cir. 2000) (en banc); *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 694 (6th Cir. 2013) (citing *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 724 (6th Cir. 2011)). That describes Smithwick's role here, which was limited to preparing the protective custody order petitions filed in juvenile court to effectuate M.W.'s removal. As this conduct was "intimately associated" with a judicial proceeding, Smithwick was entitled to absolute prosecutorial immunity. *See Pittman*, 640 F.3d at 724–25 (granting absolute immunity to a social worker for claims relating to her filings "in support of [a] motion for permanent custody in her capacity as a legal advocate").

**QUALIFIED IMMUNITY**

1. Barnett next challenges the district court's grant of summary judgment to Smithwick on all Fourth Amendments claims. We review the district court's summary judgment ruling de novo. *Griffith v. Franklin County*, 975 F.3d 554, 566 (6th Cir. 2020) (citation omitted).

A government officer is entitled to qualified immunity for claims brought pursuant to 42 U.S.C. § 1983 unless the officer (1) violates a federal statutory or constitutional right, and (2) the unlawfulness of the officer's conduct was "clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted). As to that latter requirement, a government officer's conduct violates "clearly established" law when, at the time of the incident, the "contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted) (cleaned up).

When it comes to defining the exact contours of a constitutional right, we avoid defining clearly established law "at a high level of generality." *Id.* at 742. While a case need not be "directly on point" to cement an issue of law as clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 741. Broad legal platitudes are thus "of little help in determining whether" a specific prohibition "is clearly established." *Id.* at 742 (citation omitted). Equally ill-advised is defining a clearly established law too rigidly. Qualified immunity, after all, must give government officers "breathing room to make reasonable but mistaken judgments," *Kent v. Oakland County*, 810 F.3d 384, 395 (6th Cir. 2016) (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013)), as it serves to protect "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

2. The Fourth Amendment protects one from "unreasonable searches and seizures" by a government officer. U.S. CONST. amend. IV. Those protections extend to a child in the context of a warrantless "seizure" by a social worker. *Andrews v. Hickman County*, 700 F.3d 845, 859 (6th Cir. 2012). So absent a recognized exception like consent or a reasonable belief that exigent circumstances exist, removal of a child from the home is governed by the Fourth Amendment's warrant requirement. *Id.* at 859–60; *see also Godboldo v. Wayne County*, 686 F. App'x 335, 343 (6th Cir. 2017) ("The removal of a child from his custodial parents' home is a seizure for Fourth Amendment purposes, which is constitutionally reasonable if it is pursuant to a court order, is supported by probable cause, or is justified by exigent circumstances." (citation omitted)).

The district court granted Smithwick summary judgment on the basis of qualified immunity on all Fourth Amendment claims relating to M.G.W.'s removal from the hospital, finding that it was not clearly established that a reasonable officer would believe it necessary to obtain a court

order to lawfully effectuate a removal in that setting. Although qualified immunity typically presents a two-step analysis, we have discretion to skip the first step in certain instances. *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009). For example, we may pass over the constitutional violation question when the parties' briefing on the issue is "woefully inadequate," or where the issues are "so factbound that the decision provides little guidance for future cases." *Id*. at 237, 239. Both of those traits are present here. Barnett's briefing on the constitutional questions "lacks clarity and detail, posing a risk that we will decide the issue incorrectly." *Barber v. Miller*, 809 F.3d 840, 845 (6th Cir. 2015). And the exigency determinations in this case turn on circumstances so fact-specific that our "law elaboration purpose" will not be well-served by deciding those questions today. *See Pearson*, 555 U.S. at 237 (quoting *Buchanan v. Maine,* 469 F.3d 158, 168 (1st Cir. 2006)). Thus, faced with a quintessential "poorly presented constitutional question but an easily resolved clearly established question," we decline to reach the constitutional questions in this case and proceed straight to the clearly established law inquiry. *See Lyons v. City of Xenia*, 417 F.3d 565, 582 (6th Cir. 2005) (Sutton, J., concurring).

Barnett points to *Kovacic* as evidence that the warrantless removal of M.G.W. violated clearly established law. 724 F.3d at 699. But *Kovacic* is unlike today's case. For one thing, qualified immunity was denied there because the social worker in question was relying on "weeks-old" information, whereas here, the situation unfolded in real time. *Id.* at 696. For another, *Kovacic* "turned on the greater constitutional concerns surrounding government intrusion into a citizen's home," as there, children were removed from their mother's home without a warrant. *Barber*, 809 F.3d at 846 (citing *Kovacic*, 724 F.3d at 695, 698–99); *accord Schulkers v. Kammer*, 955 F.3d 520, 535 (6th Cir. 2020). Here, by comparison, M.G.W. was warrantlessly removed from a hospital, not her home. And because "the Fourth Amendment has drawn a firm line at the

entrance to the house," removing a child from a hospital presents different constitutional implications and raises unsettled questions of constitutional law. *See Barber*, 809 F.3d at 845 (citing *Andrews*, 700 F.3d at 854–56).

The upshot of those implications was not clearly established as of 2016. Since that time, we have granted qualified immunity to social workers who conducted a warrantless *in-school* interview because a warrantless seizure in that location was not a clearly established constitutional violation. *Schulkers*, 955 F.3d at 534–36. That decision helps explain why the principle was not clearly established in 2016. Suffice it to say, a reasonable officer in Smithwick's position would not have known that emergency removal from a location outside the home was a clearly established constitutional violation. Especially so for someone in Smithwick's shoes, who, as a lawyer, would recognize the special protections in our constitutional system for searches and seizures in the home. *Cf.* Gerald S. Dickinson, *The Puzzle of the Constitutional Home*, 80 Ohio St. L.J. 1099, 1100 (2019) ("The home occupies a special place within the Constitution."). Qualified immunity grants state actors the space to make just this kind of reasonable, if imperfect, decision. *See Kent*, 810 F.3d at 395. All told, Smithwick was entitled to qualified immunity.

## CONCLUSION

We **AFFIRM** the district court's grant of summary judgment to Smithwick on all claims relating to M.W.'s removal and to the Fourth Amendment claims relating to M.G.W.'s removal, and **AFFIRM** the district court's denial of Barnett's motion for new trial on her procedural due process claims.